Carey E. Matovich
Katherine S. Huso
MATOVICH, KELLER & MURPHY, P.C.
2812 First Avenue North, Suite 225
P.O. Box 1098
Billings, MT 59103-1098
Telephone: (406) 252-5500
Facsimile: (406) 252-4613
Email: cmatovich@mkmfirm.com
        khuso@mkmfirm.com

Karl Geercken*
Amber Wessels-Yen*
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel.: (212) 210-9400
Fax: (212) 210-9444
Email: karl.geercken@alston.com
        amber.wessels-yen@alston.com
*Admitted Pro Hac Vice

Attorneys for Natalia Potanina

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

|  |  |
|---|---|
| In Re the Application of NATALIA POTANINA<br><br>For an Order to Take Discovery Pursuant to 28 U.S.C. § 1782(a) | Cause No.: CV-14-19-BLG-SPW<br><br>DECLARATION OF PHILIPP RYABCHENKO IN OPPOSITION TO MOTION TO QUASH |

## DECLARATION OF PHILIPP RYABCHENKO
## IN OPPOSITION TO MOTION TO QUASH

**PHILIPP RYABCHENKO** declares as follows pursuant to 28 U.S.C. § 1746:

1.      I am a Russian attorney and a partner of the Biel Law Firm with offices at Suite 9, 28 (Building 1), Novaya Basmannaya Street, Moscow, Russia.  I have worked as a lawyer in Russia since 2001.  A true and correct copy of my *curriculum vitae* is attached hereto as Exhibit A.

2.      I make this declaration on the basis of my own personal knowledge and a review of the Russian court files available to me.  I speak and understand basic English and have prepared this declaration in English with the help of English-speaking individuals.

3.      I represent Mrs. Potanina in a pending divorce action in Moscow, Russia, that was initiated by her husband, Vladimir Potanin.  This divorce action currently includes proceedings entitled "Petition for Dissolution of Marriage between Vladimir Olegovich Potanin and Natalia Nikolaevna Potanina," docket number 2-259/13, brought in the Judicial District No. 418 of Presnensky District Magistrate Court in Moscow, Russia (the "Magistrate Court").  It also currently includes asset division proceedings that I understand have been brought in the Presnensky District Court of Moscow (the "District Court"), although papers for that action have not yet been served on Mrs. Potanina or myself.

### The Russian Divorce Court Proceedings

4.      Mr. Potanin instituted the divorce proceedings in the Magistrate Court.  Under Article 23 of the Civil Procedure Code of the Russian Federation, the Magistrate Court has jurisdiction over cases related to division of marital assets only if the amount of the claim does not exceed fifty thousand rubles (approximately $1,400 USD).  If the amount of property subject

to division exceeds this amount, the case must be transferred by the Magistrate Court to a federal judge in a district court.

5.     The first hearing in the divorce proceedings before the Magistrate Court was held on December 25, 2013.  At the beginning of this hearing, Mr. Potanin's counsel asked the Magistrate Judge to close the proceedings to the public and stated that the request was intended to protect Mr. Potanin's right to privacy.  This level of secrecy is typically only imposed in cases involving state secrets, closed adoptions, commercial secrets, the right to privacy or other circumstances that, if discussed openly, could hinder the proper hearing of the case or cause disclosure of the above secrets or violation of the rights and lawful interests of the individual. Furthermore, Item 11 of Judgment N 35 of the Plenum of the Supreme Court dated December 13, 2012 "On open and transparent court proceedings and on access to information about court activity" states that the mere fact that a case involves information regarding the private lives of the individuals concerned is not unconditional grounds for closing the proceedings.  The Supreme Court also specified that when courts must decide whether or not to close proceedings to protect an individual's right to privacy, they must take into consideration the nature and contents of the information on the person's private life, as well as the potential consequences of disclosing such information.

The Court issued a ruling to hear the case in closed session without giving reasons for its decision and, in violation of Judgment of the Plenum of the RF Supreme Court, did not indicate specifically which details of the private life of Mr. Potanin were involved. It also did not indicate the potential consequences of disclosing such information.

6.     A second hearing was held before the Magistrate Court on February 25, 2014, at which I represented Mrs. Potanina.  At the hearing, I moved for another continuance so as to

allow Mrs. Potanina additional time to obtain information and documents in support of her claims with regard to the division of marital property, so that Mrs. Potanina could have those claims heard as part of the marriage dissolution proceedings.  I informed the Magistrate Court that Mrs. Potanina's attorneys in the United States had filed multiple applications to take discovery in the U.S. because Mrs. Potanina believed that Mr. Potanin had alienated or was concealing marital assets that should have been the subject of marital asset division proceedings in Russia.  However, Mr. Potanin's counsel objected to the motion for a continuance, and the Magistrate Court denied the motion.

7.     Mr. Potanin's counsel then informed the Magistrate Court that Mr. Potanin had initiated a separate marital property division proceeding in a Russian District Court.   As described below in paragraphs 23-26, the Russian Supreme Court has issued guidance to Russian courts stating that asset distribution should be decided simultaneously with marriage dissolution issues, and that if a Russian Magistrate Court dissolving a marriage learns that there is a property dispute between the parties, such issues must be considered jointly.  It is our position that the marital dissolution proceedings before the Magistrate Court should therefore have been continued or transferred to the District Court in accordance with Russian law on February 25. Instead, at Mr. Potanin's insistence, and over my objections, the Magistrate Judge moved forward with the proceedings in the Magistrate Court.

8.     Also during the hearing on February 25, Mr. Potanin's counsel submitted to the Magistrate Judge two rental agreements for commercial space (100 pages) and claimed that these documents showed that the Potanins' marriage had actually terminated in January 2007.  I objected to the introduction of such evidence on the grounds that it was not relevant to the dissolution or child support issues, and that for this very reason at the previous proceeding on

December 25, 2013 the court had already decided on the record that it would not address the issue of the actual date of termination of marital relations.

9.     Indeed, the Magistrate Judge confirmed orally that the issue of actual termination date of the marriage was withdrawn from consideration by the Magistrate Court, because the issue was of no relevance to the matter of marriage dissolution or child support.  Nevertheless, the Magistrate Judge proceeded to review the documents and refused my request to adjourn the hearing so that I could analyze and respond to this just-provided evidence and submit my own additional evidence to disprove Mr. Potanin's claim on this point.  The Magistrate Judge disregarded my objections to the evidence and granted me just ten minutes to review the documents presented by Mr. Potanin's counsel.  Due to their volume, I was not able to fully review the documents in the time provided.

10.     Over my objections, the Magistrate Court granted Mr. Potanin's request to issue a divorce decree.  As a separate part of its ruling, the Magistrate Court also decided that Mr. Potanin should pay one quarter of his salary and/or other income to Mrs. Potanina as support for their minor child.

11.     A marriage dissolution proceeding can last longer than three months if, for example, a party requests additional time to gather evidence to present to the court relevant to the issues of child custody, child support, alimony or division of marital property.   In Mrs. Potanina's case, however, the Magistrate Court cut short the proceedings without ensuring the parties' equality and issued a decree of divorce on February 25, 2014.  In light of Mrs. Potanina's repeated objections to the undue speed of the marriage dissolution proceedings, her motion to postpone the hearing in the marriage dissolution proceedings, the pendency of the U.S. discovery proceedings, and my objections concerning the Magistrate Court's procedural violations, it was

unusual and improper that the dissolution of marriage was decreed so quickly without allowing a party to effectively protect its interests and without postponing the proceedings for such purpose.

12.     Following the February 25 hearing, Mr. Potanin's Russian counsel stated to the press that Mr. Potanin's monthly child support payment of one quarter of his monthly income would amount to approximately 8.5 million rubles (approximately USD $236,631.50).   On February 25, she also announced to the press that Mr. Potanin had initiated a marital property division proceeding in the Russian District Court five days prior, on February 20, 2014, and that a hearing would be held in that proceeding on March 13.  A true and correct copy of a Russian news article relating these statements is attached hereto as Exhibit B.  On March 3, additional media reports revealed that Mr. Potanin's filings in the new proceeding had disclosed "virtually all family real property", that Mrs. Potanina's share thereof would be worth 2.5 billion rubles (approximately seventy million dollars), and that that the rest of Mr. Potanin's multi-billion dollar fortune had been pledged to charity.  Russian news articles relating these facts are attached hereto as Exhibit C and as Exhibit 3 to the Declaration of Yeugenia Shvets which accompanied the respondent's motion to quash.  .

13.     Mrs. Potanina and I have been unable to verify this information, since we have not yet received a copy of any of the papers related to the District Court filing.  According to Article 150, Section 2 of the Civil Procedure Code of the Russian Federation, a judge shall mail or cause to be hand-delivered to the respondent a copy of a claim for division of marital assets, and any documents attached thereto which substantiate the claimant's claim.  However, although Mr. Potanin's marital asset division proceeding was allegedly filed on February 20, 2014, Mrs. Potanina has not yet received copies of the papers filed in that proceeding, nor has Mrs. Potanina been served with such papers.

14.     The initial hearing in the District Court case was held on March 13, 2014.  It was continued until April 14, 2014.

**The Magistrate Court's Written Decision and the Violation of Confidentiality**

15.     The resolution announced by the Magistrate Court on February 25 did not include specific findings of fact.  In Russian divorce proceedings, a full written decision including findings of fact is usually only issued by the court when a party to the proceeding requests that it be written by the court.  Otherwise, the court issues only a brief written summary of its disposition of the case.  Requests for a full written decision are made by a party's representative at a court hearing, or by a written request of a party that is recorded in the case docket within five business days after the court's decision.  A court usually will not *sua sponte* issue a written decision absent a request from one of the parties to a proceeding.

16.     In the Potanins' case, because the Magistrate Court had ruled that the proceedings would be closed to the public, a written decision would have been confidential and disclosed only to the parties and their representatives.  When a divorce proceeding is closed to the public, the parties and representatives may not disclose the court's findings of fact to non-participant third parties.  Instead, only the operative part of the court ruling (for example, the decree of divorce or the award of child support) may be disclosed.  Disclosure of other confidential information and details to non-participant third parties, including the disclosure of confidential portions of a written decision, may carry civil and criminal penalties.

17.     During and after the February 25 hearing, I did not request a written decision from the Magistrate Court.  The decision was obtained by Potanin's representative.

18.     On March 12, 2014, Mrs. Potanina's U.S. counsel shared with me a copy of what should have been a confidential written decision of the Magistrate Court dated February 25, 2014, concerning the Magistrate Court's findings of fact and decisions of law reached on that

date (the "Written Decision"), which had been publicly filed as an exhibit to Norilsk Nickel

USA's motion to quash in the Western District of Pennsylvania on March 10, 2014.  Due to the

Magistrate Court's confidentiality restrictions, only Mr. Potanin's counsel could have received

the Written Decision from the Magistrate Court, and only they could have shared the Written

Decision with counsel for Norilsk Nickel USA.  It appears that Mr. Potanin's counsel has

violated Russian confidentiality laws by providing the Written Opinion to third parties in the

United States.

19.     Prior to receiving the full text of the Written Decision from Mrs. Potanina's U.S.

counsel, I was not aware that such a document even existed.

**Appeal of the Magistrate Court's Written Decision**

20.     The Magistrate Court's Written Decision is not yet final, because the time to

appeal the decree of dissolution has not yet expired.  Under Article 25, Section 1 of the Russian

Family Code, a marriage dissolved by a court is considered terminated as of the effective date of

the court's decision.  According to Article 209, Section 1 of the Civil Procedure Code of the

Russian Federation, court decisions become effective once the time to appeal has expired, unless

they have been appealed.  Should an appeal be filed, court decisions become effective once the

appellate court has ruled on the appeal, unless the contested decision is overturned.

21.     I have reviewed the March 12, 2014 Supplemental Declaration of Professor O. A.

Dyuzheva and its statements concerning the Written Decision and the date of actual termination

of the Potanins' marriage.  Contrary to Ms. Dyuzheva's statement in paragraph 3 of that

declaration, the Magistrate Court's finding of fact that the matrimonial relationship between Mr.

Potanin and Mrs. Potanina had ceased specifically in January 2007 was of no relevance to the

Magistrate Court's decision to dissolve the marriage.  Instead, the Magistrate Court only

determined that the marriage was ended as of February 25, 2014. Any other more specific

determination of the date of marital termination can be relevant only to an asset division proceeding, which was not before the Magistrate Court. The Magistrate Court does not have jurisdiction to resolve disputes regarding division of joint spousal assets worth over RUB 50,000 (approximately $1,400).

22.     Mrs. Potanina intends to file an appeal.

**Relevant Russian Law Provisions**

23.     The Russian Supreme Court has promulgated Plenum Opinion No. 15 of November 5, 1998, which provides guidance to the Russian courts on the laws and procedures to be followed by them in the adjudication of divorce actions.  The Plenum Opinion explicitly includes the Supreme Court's guidance on not only decrees of divorce, but also the interconnected issues such as child custody, child support, alimony and marital property division.

24.     In accord with the foregoing, Russian courts commonly address the division of marital property of divorcing spouses in concert with the dissolution of a marriage.

25.     Clause 11 of the Plenum Opinion provides that, if the court that is dissolving a marriage finds that the spouses have not reached agreement regarding the division of the common property of the spouses, the court should resolve such issues on the merits simultaneously with the claim for dissolution of marriage.  Thus, it is preferable to the Russian courts that all issues related to dissolution of a marriage, including the division of common property, be resolved in a single proceeding.

26.     During the course of a dissolution of marriage case before a Magistrate Judge, if a claim is instituted before a Federal Judge at a district court (such as a custody dispute or a claim for division of marital property in excess of fifty thousand rubles (about USD 1,400)), the Magistrate Judge must, as a general rule, transfer the dissolution of marriage case out to be heard jointly with the other issues at the district court.

27.     I have reviewed the March 3, 2014 Declaration of Professor Olga A. Dyuzheva. While Paragraph 8 of her declaration states that the two-month period for division of assets might be extended an unlimited number of times at a party's request, it omits the necessary and important fact that a court can also decide to deny that party's request and settle an asset division dispute more quickly, despite a party's objections.  Ms. Dyuzheva's March 3 Declaration deals only with general family law theories, and does not reflect or take into account the aggressive actions of Mr. Potanin or the decisions of the Magistrate Court to date to expedite proceedings at his urging.

28.     Marital property is usually subject to equal division under Articles 38 and 39 of the Russian Family Code.  Under the Plenum Opinion, Clause 15, marital property subject to division includes not only the spouses' joint property that at the time of the hearing is in their possession, but also that joint property which is held by third parties.  Additionally, Clauses 16 and 17 of the Plenum Opinion further instruct that, pursuant to Articles 35 and 39 of the Code, if the court determines *during the consideration of a claim for division of joint spousal property* that one of the spouses (a) transferred or spent common property contrary to the will of the other spouse and the interests of the family, or (b) concealed property, that property or the cost thereof shall be accounted for during the division.  Furthermore, to account for the interests of minor children, the interests of one of the spouses under special circumstances, including the other spouse's efforts to transfer or conceal marital property, the courts are directed to take such circumstances into account and may deviate from the principle of equal spousal shares in such instances.

29.     Under Article 38 of the Russian Family Code, when dividing marital assets the court shall, at the request of the spouses, determine what property is to be transferred to each of

the spouses.  If one of the spouses receives property the value of which exceeds the share to which he is entitled, the other spouse may be awarded monetary or other compensation. The court may only act to divide common property that has been specifically listed before it.  Thus, the District Court may currently act to divide only the small amount of property listed by Mr. Potanin.  If Mrs. Potanina wishes to have other common property divided by the District Court, she must first be able to specifically list the property.  Due to Mr. Potanin's transfer and concealment of his holdings, Mrs. Potanina cannot create a complete list of common property without the aid of discovery in Russia, the United States, and elsewhere in the world in order to identify all of Mr. Potanin's holdings.

30.    Mrs. Potanina has the right to list, as part of a marital asset division proceeding, all assets acquired by the spouses from the date they are married until the date of their divorce decree.  Regardless of the date on which a competent Russian court conclusively decides that the marriage terminated, evidence concerning Mr. Potanin's disposition of his assets from the date of the termination of the marriage through the present will be relevant to the marital asset division proceedings as evidence of his transfer, alienation or concealment of assets that should rightfully be regarded as part of the marital estate.

31.    Therefore, even if a competent court held that the Potanins' separation and the termination of the marriage took place before November 2013, information regarding assets held after the  date of separation remains relevant to the marital asset division proceeding before the District Court, because the District Court can be asked by Mrs. Potanina to determine whether such assets were acquired by the spouses during their marriage, or were acquired using funds or assets that existed while the marriage was in effect, and are therefore part of the marital estate. Paragraph 9 of Ms. Dyuzheva's March 3, 2014 declaration states that a Russian court "may rule"

that assets acquired after separation are individual assets, but leaves out that a Russian court may also very well rule that assets acquired after separation are still marital assets.

32.     In addition, paragraph 10 of Ms. Dyuzheva's declaration of March 3, 2014 states that a Russian court "may exclude from consideration" evidence relating to assets acquired after the separation, but leaves out that a Russian court may also very well consider and rely on evidence relating to assets acquired after separation.   For example, a Russian Court will generally consider evidence of transfer and acquisition of assets after the parties' separation date in light of claims regarding alienation and concealment of marital assets.

33.     According to Article 56 of the Civil Procedure Code of the Russian Federation, each party is required to produce evidence in support of its claims and objections.  According to Article 195, Paragraph 2 of the Civil Procedure Code of the Russian Federation, a court may base its rulings solely on evidence presented to and examined by the court during a proceeding. These provisions, in concert with the adversarial principle set forth in Article 12 of the Civil Procedure Code of the Russian Federation, make it possible for a Russian court to reach a decision based solely on evidence submitted by the parties at the time of a court hearing, without affording any party additional time to procure additional evidence.  In light of the foregoing, there is a danger that the District Court, in addressing the issue of the Potanins' marital property, could rule that all marital property has been divided, and foreclose further proceedings concerning the division of property before Mrs. Potanina has the opportunity to gather complete evidence concerning marital property that her husband has wrongfully transferred or concealed from her.

34.     Mrs. Potanina's share of an equally-divided marital estate is said to amount to no more than 2.5 billion rubles (about seventy million U.S. dollars).  Since the parties have no

prenuptial agreement, and in light of the rules concerning an equal division of marital property, Mrs. Potanina should be entitled to one half of all marital assets.  If Mr. Potanin is in fact asserting in court that the spouses' marital estate amounts to no more than 5 billion rubles (about one hundred forty million U.S. dollars) then he is not accounting for 99% of his estimated net worth.  In that case, assets identified by Mrs. Potanina can be used to support a claim that marital property has been alienated against her will or concealed from her.  Under such circumstances, among other things, she would be entitled to claim more than half of the assets identified by Mr. Potanin due to his deceit. It is important, particularly if her husband carries through on his threats to transfer 99% of the marital assets to charity over her objections, that Mrs. Potanina be able to support her claims that she is entitled to far more than half of the 1% of the marital property that he admits he still possesses.

35.    It is therefore important that Mrs. Potanina gather all the evidence she can concerning marital assets that Mr. Potanin transferred, spent or concealed, for use in the current asset division proceeding brought by her husband in the District Court as well as for any future proceedings regarding concealed or transferred assets.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 2̲6̲, 2014 in Moscow, Russia.

_____
Philipp Ryabchenko

12

# EXHIBIT A

Philipp Vladimirovich Ryabchenko

**Education**

Moscow State Law Academy (2001).

Awarded the degree of Candidate of Legal Sciences [Ph. D. in Law] (2004).

In 2006, training courses at the Supreme Commercial Court, with honors.

**Specialization**

P. Ryabchenko specializes in legal analysis and development of an optimal position on the most complex and legally confusing situations.

**Experience**

Since 2001, P. Ryabchenko has represented clients of a wide range — from individual entrepreneurs to large international corporations.  He has worked as a lawyer for more than 10 years.

As a Senior Partner of the law firm "BIEL", he has represented the clients' interests in more than a thousand cases in commercial courts in Novosibirsk, Salekhard, Tambov, Yekaterinburg, St. Petersburg, Bryansk, and Moscow.

He has represented clients in courts of all levels, including the Supreme Commercial Court of the Russian Federation, the Supreme Court of the Russian Federation, and International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation.

P. Ryabchenko represents the interests of large businessmen in family disputes, including those related to the definition of the place of residence of the children (all disputes with participation of P. Ryabchenko were resolved peacefully).  The family law cases that he has worked on include the divorce and division of property of Russian billionaire Arkady Romanovich Rotenberg.

From 2005 to 2007, in the group of lawyers of the law firm "BIEL" he by proxy represented the interests of Moscow Patriarchate of the Russian Orthodox Church in a dispute with the OJSC [Open Joint-Stock Company] "Moscow Machine Building Plant "Znamya" ["Banner"] to return to the Church the Temple of the Nativity of the Blessed Virgin in Butyrskaya suburb.

From 2007 to 2008, P. Ryabchenko by proxy simultaneously represented the interests of the Moscow City Department of Education and of the Federal Agency for Federal Property Management in the City of Moscow in a dispute with the CJSC [Closed Joint-Stock Company] "Firm Zarnitsa" ["Firm Summer Lightning"] (before privatization —

Moscow Headwear Factory "Krasny Voin" ["Red Warrior"]) to return to the state ownership and subsequently to transfer the illegally privatized building to College No. 44 of the Secondary Vocational Education.

From 2004 to 2008, he by proxy represented the interests of the Government of the Moscow Region and Administration of the Moscow Region in various legal disputes, including those related to building up of the Moscow Region.

Since 2009, P. Ryabchenko has represented the interests of the largest pharmaceutical companies in disputes with distributors, contractors, and also with antimonopoly authorities. He represented the pharmaceutical companies in the cases on bankruptcy of distributors. He prepared new agreements and carried out an expertise of the existing agreements with distributors in view of the law enforcement practice of antimonopoly bodies.

**Publications**

P. Ryabchenko has several publications on corporate law (protection of minority shareholders' rights), and employment law (protection of the employer's rights).

# EXHIBIT B

# FORBES

[…]

## COURT POSTPONES HEARING OF POTANIN CLAIM FOR DIVISION OF PROPERTY

The Presnensky Court of Moscow has postponed pre-trial preparations in the claim filed by Interros head Vladimir Potanin (No. 86 in Forbes' global rating with a fortune of $12.6 billion) to divide assets jointly acquired with his spouse Nataliya, RAPSI reported on Thursday, March 13.

[image]

The proceedings were rescheduled because of the respondent's failure to appear. "The law establishes a procedure for notifying the parties of the start of proceedings. We have yet to receive a summons or notice from the court regarding the start of proceedings on any petition by Mr. Potanin," said Filipp Ryabchenko, representative for the billionaire's former spouse.

At the end of February, the court formalized the Potanins' divorce and ruled that the entrepreneur must pay alimony of 25% of his earnings, or approximately RUB 8.5 million, to support his minor son.

The businessman's former spouse, Nataliya Potanina, is currently fighting in a U.S. court for disclosure of information regarding her former husband's assets. She filed a request with a federal court in New York in January 2014.

The former spouses have three children: 29-year-old Anastasia, 24-year-old Ivan and 13-year old Vasily. In a 2010 interview with *Forbes*, Potanin said he would not leave his children an inheritance because the receipt of so much money could "demotivate" them. In 2013, the Russian billionaire joined Bill Gates and Warren Buffet (who rank #1 and #4 in the Forbes global rating of billionaires, with assets totaling $76 billion and $58.2 billion, respectively) in the Giving Pledge initiative, with a promise to give his wealth to charity.

Vladimir Potanin is the owner and president of Interros, one of the largest private investment companies in Russia, which in turn holds stakes in Norilsk Nickel, the ProfEstate Group, the Cinema Park movie theater chain, the Interport transportation and logistics company and the Roza Khutor company.



**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK          )
                          )
                          )     ss
COUNTY OF NEW YORK        )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Russian into English of a Forbes article titled "Court Postpones

Hearing of Potanin Claim for Division of Property."

Ken Hetzel, Senior Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me

this 20ᵗʰ day of March, 2014.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2017

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel +1.212.631.7432 fax +1.212.631.7778
San Francisco  220 Montgomery Street Ste. 438, San Francisco CA 94104 U.S.A tel +1.415.576.9500 fax +1.415.520.0525
Washington 1025 Connecticut Avenue, Suite 1000, Washington, DC 20036, U.S.A. Tel +1.202.828.1267 Fax +1.202.828.1271
London  8-11 St. John's Lane, London EC1M 4BF, United Kingdom Tel +44.20.7553.4100 Fax+44.20.7990.9909
Paris 75 Boulevard Haussmann, F- 75008 Paris, France tel +33.1.42.68.51.47 fax +33.1.77.72.90.25
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082

translations@geotext.com  |  www.geotext.com



# Суд отложил рассмотрение иска Потанина о разделе имущества

Пресненский суд Москвы отложил досудебную подготовку по иску главы «Интерроса» Владимира Потанина (№86 в глобальном рейтинге Forbes, состояние — $12,6 млрд) о разделе совместно нажитого с супругой Натальей имущества, передает в четверг, 13 марта, РАПСИ.



Заседание было перенесено в связи с неявкой со стороны ответчика. «Законом установлена процедура уведомления сторон о начале судебного процесса. Мы до настоящего момента не получили судебных повесток или извещений о начале процесса по какому-либо иску господина Потанина», — рассказал представитель бывшей супруги миллиардера Филипп Рябченко.

В конце февраля суд оформил развод супругов Потаниных и постановил, что предприниматель должен выплачивать алименты в размере 25% от его заработка или около 8,5 млн рублей на содержание несовершеннолетнего сына.

Бывшая супруга бизнесмена Наталья Потанина, в свою очередь, добивается в американском суде раскрытия информации об активах бывшего мужа. Она обратилась с соответствующим запросом в федеральный суд Нью-Йорка в январе 2014 года.

У бывших супругов трое детей: 29-летняя Анастасия, 24-летний Иван и 13-летний Василий. Потанин еще в 2010 году пообещал оставить их без наследства, объяснив в интервью Forbes, что получение таких денег может «демотивировать». В 2013 году российских миллиардер присоединился к инициативе Билла Гейтса и Уоррена Баффетта (соответственно №1 и №4 в глобальном рейтинге миллиардеров по версии Forbes, состояния — $76 млрд и $58,2 млрд) Giving Pledge и пообещал отдать свое состояние на благотворительность.

Владимир Потанин — владелец и президент одной из крупнейших частных инвестиционных компаний России «Интеррос», которая, в свою очередь, владеет пакетами акций ГМК «Норильский никель», группы «Профстейт», сети кинотеатров «Синема парк», транспортно-логистической компании «Интерпорт» и компании «Роза Хутор».

# EXHIBIT C

3/18/2014          Vladimir Potanin Prepared To Give Ex-Wife 0.5% of His Fortune :: Economics :: Top.rbc.ru

## Vladimir Potanin Prepared To Give Ex-Wife 0.5% of His Fortune



Billionaire Vladimir Potanin, the owner of Interros Management Company and the CEO of Norilsk Nickel, is prepared to give his ex-wife Nataliya RUB 2.5 billion in property and cash, his lawyer, Marina Ivanova, told *RBC Daily* newspaper, referring to the claim for division of property.

According to Ivanova, the offer takes the former spouse's interests into account. The lawyer did not clarify how the sum of RUB 2.5 billion was arrived at, or exactly which real estate assets Vladimir Potanin is offering.

Meanwhile, Nataliya Potanina's lawyer, Filipp Ryabchenko, said that he learned about this figure from the newspapers, and that neither he nor his client has received a copy of the petition. "Potanin's offer, in our opinion, has nothing to do with the law. Half of one percent of the family fortune cannot be described as a generous offer. We will insist on a fair division of the marital assets," Ryabchenko said.

Talks between the parties to the claim for division of property, which Potanin filed with the Presnenskiy District Court, will take place on March 13, according to a previous statement by Potanin's lawyer.

At current prices, the value of shares in Potanin's largest asset—a 30% stake in Norilsk Nickel—totals RUB 270.3 billion. *Forbes* magazine estimates the businessman's total fortune at USD 12.6 billion.

It is not entirely clear whether Nataliya Potanina has a shot at getting half of her husband's assets, Dmitry Matveyev, a managing partner at the law firm of Dmitry Matveyev and Partners, believes. There are a lot of nuances in case precedent having to do with the sources of acquisition of specific property. If the property was bought on credit, for example, it is important who paid off the loan and under what circumstances.

The Potanins got divorced exactly one week ago. Vladimir Potanin is supposed to pay one quarter of his income—around RUB 8.5 million a month—in alimony for their minor child, Marina Ivanova reported. Counsel for the businessman's ex-wife believes that this amount was calculated incorrectly.

March 04, 2014


**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK      )
                            )
                            )    ss
COUNTY OF NEW YORK    )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Russian into English of the attached document titled "Vladimir

Potanin Prepared to Give Ex-Wife 0.5% of His Fortune," dated March 4, 2014.


Evan Finch, Senior Project Manager
Geotext Translations, Inc.


Sworn to and subscribed before me

this _18th_ day of _March_, 20 _14_.


LYNDA GREEN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01GR6205401
Qualified in New York County
My Commission Expires May 11, 2017

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel +1.212.631.7432 fax +1.212.631.7778
San Francisco  220 Montgomery Street Ste. 438, San Francisco CA 94104 U.S.A tel +1.415.576.9500 fax +1.415.520.0525
Washington 1025 Connecticut Avenue, Suite 1000, Washington, DC 20036, U.S.A. Tel +1.202.828.1267 Fax +1.202.828.1271
London  8-11 St. John's Lane, London EC1M 4BF, United Kingdom Tel +44.20.7553.4100 Fax+44.20.7990.9909
Paris 75 Boulevard Haussmann, F- 75008 Paris, France tel +33.1.42.68.51.47 fax +33.1.77.72.90.25
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082
translations@geotext.com  |  www.geotext.com

3/18/2014                    Владимир Потанин готов отдать бывшей жене 0,5% своего состояния :: Экономика :: Top.rbc.ru

# Владимир Потанин готов отдать бывшей жене 0,5% своего состояния



Владелец УК "Интеррос" и генеральный директор "Норильского никеля", миллиардер Владимир Потанин готов отдать бывшей жене Наталье 2,5 млрд руб. недвижимостью и деньгами, рассказала газете "РБК daily" его адвокат Марина Иванова, сославшись на иск о разделе имущества.

По ее словам, предложение учитывает интересы бывшей супруги. Как получилась сумма 2,5 млрд руб. и какие именно объекты недвижимости предлагает Владимир Потанин, адвокат не уточнила.

В свою очередь адвокат Натальи Потаниной Филипп Рябченко сообщил, что узнал о такой цифре из газет и копии искового заявления ни он, ни его клиентка не получали. "Предложение Потанина, на наш взгляд, не имеет отношения к закону. Полпроцента семейного состояния нельзя назвать щедрым предложением. Мы будем настаивать на справедливом разделе семейного имущества", - сказал Рябченко.

Собеседование сторон по иску о разделе имущества, который подал Потанин в Пресненский районный суд, состоится 13 марта, как ранее сообщала его адвокат.

При текущих котировках стоимость акций крупнейшего из активов Потанина - 30-процентного пакета в "Норникеле" - составляет 270,3 млрд руб. В целом состояние бизнесмена, по оценке журнала Forbes, составляет 12,6 млрд долл.

Однозначно оценить, есть ли у Натальи Потаниной шансы получить половину имущества мужа, нельзя, считает управляющий партнер адвокатского бюро "Дмитрий Матвеев и партнеры" Дмитрий Матвеев. В судебной практике существует очень много нюансов, связанных с источниками приобретения конкретного имущества, к примеру, если оно было куплено в кредит, важно, кто этот кредит выплачивал и при каких обстоятельствах.

Чета Потаниных развелась ровно неделю назад. Владимир Потанин должен выплачивать четверть дохода в качестве алиментов на несовершеннолетнего ребенка около 8,5 млн руб. в месяц, сообщала Марина Иванова. Сторона экс-супруги бизнесмена считает, что сумма подсчитана некорректно.

04 марта 2014 г.