IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

FILED
APR 16 2014
Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| In Re the Application of NATALIA POTANINA<br><br>For an Order to Take Discovery<br><br>Pursuant to 28 U.S.C. § 1782(a) | CV 14-19-BLG-SPW<br><br>ORDER |

This case arises from divorce proceedings in Russia between Vladimir Potanin ("Potanin") and Natalia Potanina ("Petitioner"). This Court previously granted Petitioner's application to submit discovery requests related to the Russian proceedings to Respondent Stillwater Mining Company ("Stillwater") pursuant to 28 U.S.C. § 1782(a). Now before the Court is Stillwater's Motion to Vacate *Ex Parte* Order and Quash or Stay Subpoena (Doc. 23). For the following reasons, the Court denies the motion. The Court agrees to stay the subpoena, but only until the parties confer before United States Magistrate Judge Carolyn Ostby regarding the scope of the discovery.

## BACKGROUND

Much of the information presented before the Court comes from media stories and press releases. In addition to the inherent unreliability of media stories following celebrity divorces, several of the articles provide seemingly

1

contradictory information. Accordingly, this Court does not reference these articles for their accuracy, but rather to put this case in its context.

Potanin and the Petitioner, both native Russians, married in Moscow in 1983. (Doc. 2-1 at 2). Potanin later founded the Interros Company ("Interros"). (*Id*.) Over the course of the last few decades, Interros has grown into large international company. (*Id*.) In the mid-1990s, Interros gained a significant stake in several other entities, including Norilsk Nickel. (Doc. 2-1 at 25-26). In a recent article, Forbes estimated Potanin's net worth at $12.6 billion. (Doc. 33-2 at 14-15).

Potanin initiated divorce proceedings against the Petitioner on November 21, 2013 before a magistrate court in Moscow ("Moscow Court"). (Doc. 2-2 at 8). In his petition, Potanin represented that there was no dispute over the division of marital property. (*Id*.). The Petitioner rejects that assertion and states that she never agreed to any division of assets. (Doc. 2-1 at 3-4).

Petitioner represents to this Court that under Russian law, the Moscow Court had jurisdiction to grant the dissolution, but does not have jurisdiction over the division of marital assets if the amount of the claim exceeds fifty thousand rubles (approximately $1,400 USD). (Doc. 33-1 at 2). If the amount in controversy exceeds that amount, then jurisdiction properly lies before a district court. (*Id*. at 3).

Russian law also provides that the division of marital assets need not occur simultaneously with the dissolution of the marriage. (Doc. 26 at 4). Rather, proceedings to divide marital assets can be brought by either spouse for up to three years after the divorce decree or three years after the ex-spouse learns about an infringement on his or her rights to marital assets. (*Id.*). In addition, the parties are not limited to one action to divide marital assets. (*Id.*). "Russian law allows for, and contemplates, successive claims and proceedings for division of marital assets, until all marital assets are divided." (*Id.*).

On February 12, 2014, the Petitioner filed before this Court her Application for Discovery Under 28 U.S.C. § 1782. (Doc. 1). In the Application, the Petitioner stated her belief that Stillwater may have knowledge or information regarding the amounts and location of assets belonging to Interros and Potanin. This belief was based on Norilsk Nickel's former majority ownership of Stillwater. (Doc. 2-2 at 2). The next day, this Court granted the application. (Doc. 3). The Petitioner served the discovery requests on Stillwater on February 18. (*See* Doc. 8 at 7).

On February 25, 2014, the Moscow Court held a hearing on Potanin's petition for dissolution. (Doc. 33-1 at 3-4). According to Petitioner's Russian counsel, the Moscow Court granted Potanin's request for a divorce decree over Petitioner's objection. (*Id.* at 5). The Moscow Court also determined that the

parties were separated by January 2007. (Doc. 32-1 at 4). Since Petitioner's Russian counsel believes that the Russian Supreme Court strongly prefers dissolution and asset division proceedings to proceed jointly, the Petitioner intends on appealing the Moscow Court's decision. (Doc. 33-1 at 8-9).

The Court is unsure whether asset division proceedings are underway in Russia. According to an article cited by Stillwater, Potanin filed a division of assets proceeding and that a "pre-trial preparation" hearing was scheduled for March 13, 2014. (Doc. 27-8 at 2). However, in his declaration dated March 20, Petitioner's Russian counsel claimed that Petitioner had not yet seen any papers related to that proceeding. (Doc. 33-1 at 6). According to an article cited by the Petitioner, the "pre-trial preparation" was postponed due to the Petitioner's absence. (Doc. 33-1 at 18). Neither party indicates whether another hearing has been scheduled.

As discussed above, the Petitioner's discovery requests seek information that Stillwater possesses regarding any assets owned by Potanin, Interros, or Norilsk Nickel. (*See* Doc. 1-3). Included is a subpoena for a Stillwater representative to appear at a deposition to testify regarding thirteen topics related to Potanin, Interros, or Norilsk Nickel's assets and relationship to Stillwater. (*Id.* at 1-9). The Petitioner also seeks related documents. (*Id.* at 10-12). This is one of eight § 1782(a) proceedings that the Petitioner has filed in district courts across the

country seeking information regarding entities associated with Potanin. (Doc. 24 at 14).

Stillwater now moves to quash or stay the subpoena. (Doc. 23).

## DISCUSSION

28 U.S.C. § 1782 is a congressional effort "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). It provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a). In breaking down § 1782(a), a district court may grant a request where: (1) the person from whom discovery is sought resides or is found in

5

the district where request is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by the foreign tribunal or "any interested person." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 83 (2d Cir. 2004).

Even if the statutory elements are met, district courts retain broad discretion in determining whether to grant requests made under § 1782(a). *Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002). There is a "wide range of potentially applicable factors to consider." *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011). In particular, the Supreme Court has identified four factors: (1) when the respondents are nonparticipants in the foreign proceeding, the need for an order is more apparent; (2) the Court may consider the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign tribunal to U.S. judicial assistance; (3) whether the request conceals an attempt to circumvent proof-gathering restrictions of the foreign country; and (4) any unduly intrusive or burdensome requests may be rejected or trimmed. *Intel Corp.*, 542 U.S. at 263.

Stillwater advances several arguments in support of its motion. This Court will address each argument separately.

## I. An asset division proceeding is reasonably contemplated.

Stillwater first argues that the Petitioner fails to meet the statutory requirements of § 1782 as the proposed discovery would not be "for use in a proceeding in a foreign or international tribunal." Stillwater contends that since the Application for Discovery identified the pending divorce hearing as the reason for discovery, the Petitioner's request for discovery is moot. (Doc. 24 at 17-18). Stillwater continues that since the Petitioner has not yet identified where any asset division proceeding will occur, this Court cannot grant her request.

Stillwater's argument is without merit. There does not need to be a pending or ongoing foreign proceeding to grant a § 1782(a) request. Rather, foreign proceedings need only "be within reasonable contemplation." *Intel Corp.*, 542 U.S. at 259. "It is not necessary, however, for the proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually used in such a proceeding." *In re Req. for Assistance from Ministry of Leg. Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1155 (11th Cir. 1988), quoting Hans Smit, *International Litigation Under the United States Code,* 65 Colum.L.Rev. 1015, 1027 (1965); *see also Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc,* __ F.3d __, 2014 WL 104132 (11th Cir. 2014).

Here, a division of assets proceeding is certainly within reasonable contemplation. Although the Petitioner and Potanin are now divorced, the decree did not address marital property. (Doc. 32-1 at 3-5). Absent a settlement, an action to divide their assets is a near certainty.

Since division of assets proceedings are reasonably contemplated, the statutory prerequisites are met. Stillwater is found in this District and the Petitioner will be an "interested person" to the inevitable division of assets proceeding. The Court will now consider Stillwater's arguments that this Court should exercise its discretion and quash the Petitioner's discovery requests.

**II. This Court will not abstain.**

Stillwater's next contention is that this Court should abstain from ruling on the Petitioner's application under the domestic relations exception to federal jurisdiction. The domestic relations exception precludes federal courts from deciding "cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). State statutes provide the family law framework, and "in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 13 (2004). The domestic relations exception typically applies when a party seeks to invoke diversity jurisdiction to enmesh a federal court with a family law issue. *See Csibi v. Fustos*, 670 F.2d 134

(9th Cir. 1982), *Am. Airlines, Inc. v. Block*, 905 F.2d 12 (2d Cir. 1990). Indeed, the domestic relations exception announced in *Ankenbrandt* was reached only after discussing the history of diversity jurisdiction. 504 U.S. at 695-701.

Federal courts also abstain from a second class of cases "where domestic relations problems are involved tangentially to other issues determinative of the case." *Csibi*, 670 F.2d at 137. However, this Court has discretion in deciding whether to abstain from such cases. *Id.*

The Court will not abstain from deciding the Petitioner's application. While the underlying proceeding involves a domestic dispute, no state law applies. Therefore, the concerns about interfering with interpretation of state law expressed in *Ankenbrandt* and *Newdow* are not applicable. Principles of federalism are not at stake.

Further, § 1782 gives the Petitioner a federal cause of action. Although not specifically addressed, several other cases interpreting § 1782 involve discovery related to a foreign divorce. *See Lopes v. Lopes*, 180 Fed. Appx. 874 (11th Cir. 2006) (unpublished); *London v. Does 1-4*, 279 Fed. Appx. 513 (9th Cir. 2008) (unpublished); *In re Mak*, 2012 WL 2906761 (N.D. Cal. 2012); and *In re Marano*, 2009 WL 482649 (N.D. Cal. 2009).

There are no interference or comity issues at play here. This Court is not deciding the merits of any Russian proceeding. Rather, the issue before the Court

is whether the Petitioner may seek discovery from an American-based corporation. Accordingly, this Court will not abstain under the domestic relations exception.

### III. The *Intel* factors all cut in favor of the Petitioner.

Stillwater next contends that the factors announced in *Intel* compel this Court to quash the subpoena. Each factor will be discussed separately.

*A. First* Intel *factor favors the Petitioner, as Stillwater is a nonparticipant in the foreign proceedings.*

The first factor to consider is "when the person from whom discovery is sought is a participant in the foreign proceeding…the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel Corp.*, 542 U.S. at 264. Here, Stillwater is a nonparticipant in the Russian proceedings. On its face, this factor clearly cuts in favor of the Petitioner.

Stillwater offers a more novel theory. It contends that while the Russian courts cannot compel discovery from Stillwater, it does have jurisdiction over Potanin. Therefore, the Petitioner should simply depose or ask Potanin himself if she wants to know the extent of his assets.

The Petitioner has a simple response: she does not believe that Potanin will be truthful. This concern is not unique to Russian proceedings. Here in the U.S., the Federal Rules of Civil Procedure allow for service of requests for production. Fed. R. Civ. P. 34. Documents produced during discovery are often used as

impeachment evidence at either depositions or at trial. By Stillwater's logic, if a company's CEO has knowledge of data subject to an American lawsuit, a plaintiff should just be allowed to depose the CEO and not obtain any relevant documents.

In addition, there is no requirement under § 1782(a) that the Petitioner first exhaust her discovery options in Russia. Courts refuse to "engraft a 'quasi-exhaustion requirement' onto § 1782 that would force litigants to seek 'information through the foreign or international tribunal' before requesting discovery from the district court." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995). Since § 1782(a) does not require the Petitioner to seek the assistance of Russian courts first, this factor favors the Petitioner.

> *B. The second* Intel *factor favors the Petitioner, as Russian courts are generally receptive to American judicial assistance.*

The second factor to consider is "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel Corp.*, 542 U.S. at 264. In support of the Petitioner's application, her Russian counsel asserted that Russian courts are receptive to receiving U.S. federal court assistance through § 1782. (Doc. 2-2 at 3). Stillwater has not rebutted that assertion. In addition, several cases interpreting § 1782(a) involve the Russian government seeking discovery through federal courts. *In re Premises*, and *U.S. v. Sealed 1, Ltr. of Req. for Leg. Assistance from the Dep.*

11

*Prosecutor Gen. of the Russian Fedn.*, 235 F.3d 1200 (9th Cir. 2000). Since Russian courts are generally receptive to receiving discovery obtained through § 1782(a), this factor cuts in favor of the Petitioner.

> C. The third Intel *factor favors the Petitioner, as she is not trying to circumvent any Russian proceedings.*

The third factor to weigh is "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 265. Stillwater contends that this factor favors a stay of the subpoena until further guidance from a Russian court.

Stillwater points out that the Moscow Court determined that the Petitioner and Potanin separated in 2007. Stillwater's expert Professor Olga Dyuzheva states that this determination is binding upon all other Russian courts. (Doc. 31 at 3). Professor Dyuzheva further states that under Russian law, a court *may* determine that all assets acquired after separation are not divisible marital property but rather individual assets. (Doc. 26 at 6). Therefore, "a Russian court presiding over the Potanins' asset division proceedings *may* exclude from consideration any evidence relating to the assets the Potanins acquired after January 2007." (*Id.* (emphasis added)). Since all discovery sought by the Petitioners dates from 2007 onward, Stillwater believes that this Court should await further direction from a Russian court regarding the relevancy of information possessed by Stillwater.

12

The Court is not persuaded by Stillwater's argument. Information acquired under § 1782(a) does not have to be discoverable under the law governing the foreign proceeding. *Intel Corp.*, 542 U.S. 260-261. If the Russian court does not deem the information relevant, it is free to exclude any evidence obtained from Stillwater. In addition, actually knowing what information Stillwater possesses will likely help the Russian court determine its relevancy. As the Petitioner points out, Professor Dyuzheva only states that a Russian court may determine post-separation assets non-divisible. Petitioner's Russian counsel claims that Russian courts could just as well consider assets acquired after separation, especially if they were purchased using marital funds. (Doc. 33-1 at 11-12).

Given that Stillwater fails to show that the Petitioner has "side-stepped" Russian law in seeking Stillwater's information, this factor favors the Petitioner.

> *D. The parties shall meet before Judge Ostby to attempt to limit the discovery requests.*

The fourth factor provides that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel Corp.*, 542 U.S. at 265. A § 1782(a) request should be denied if the Court "suspects that the request is a 'fishing expedition' or a vehicle for harassment." *In re Req. for Assistance*, 848 F.2d at 1156.

Stillwater argues that it will incur significant expense in complying with the Petitioner's discovery requests. Its Information Services Support Manager estimates that it will cost hundreds of thousands of dollars to produce the requested

documents. (Doc. 25 at 3-4). Stillwater notes that its S.E.C. filing in December 2010 indicate that Potanin-controlled entities no longer have a stake in Stillwater. (Doc. 27-1). Given the several changes in its ownership since then, Stillwater argues that it should not be forced to bear this expense to search for evidence that is unlikely to be found.

For whatever reason, Stillwater and the Petitioner have failed to agree on the scope of discovery. This Court does not have enough information to determine how the Petitioner's requests could be limited.

For that reason, the Court will refer this matter to Judge Ostby for a settlement conference for the purposes of resolving Stillwater's objections to the scope of discovery if possible. If the parties cannot reach an accord about the scope of the Petitioner's requests, this Court will set the matter for hearing; however, the parties shall act reasonably and in good faith to resolve the discovery dispute. The Court's assessment of the aforementioned factors may well influence the scope of discovery permitted.

## Conclusion

Stillwater's Motion to Vacate *Ex Parte* Order and Quash or Stay Subpoena (Doc. 23) is DENIED. The subpoena is STAYED pending possible resolution of this matter before Judge Ostby. This Court will formally refer this matter to Judge Ostby for a settlement conference by separate order.

The Clerk of Court shall notify both parties and Judge Ostby of the entry of this Order.

DATED this 15th day of April, 2014.

/s/ Susan P. Watters
SUSAN P. WATTERS
United States District Judge