Jason S. Ritchie
Michael P. Manning
Holland & Hart LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, MT 59103-0639
Telephone: (406) 252-2166
Fax: (406) 252-1669
jritchie@hollandhart.com
mpmanning@hollandhart.com

Steven S. Michaels
Yeugenia Shvets
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel.:  (212) 909-7265
Fax:   (212) 909-6836
ssmichaels@debevoise.com
jshvets@debevoise.com

*Counsel for Stillwater Mining Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| In re the Application of NATALIA POTANINA, | No. CV-14-19-BLG-SPW |
| For an Order to Take Discovery | **MEMORANDUM OF LAW IN SUPPORT OF STILLWATER'S SCOPE OF DISCOVERY AND PROPOSED PROTECTIVE ORDER** |
| Pursuant to 28 U.S.C. § 1782(a) | |

Respondent Stillwater Mining Company (Stillwater) respectfully makes this submission in support of its proposed scope of discovery and protective order.

## I. SCOPE OF PROPOSED DISCOVERY

Stillwater, a third party with no current relationship with Vladimir Potanin, Interros Company (Interros), or MMC Norilsk Nickel (Norilsk), finds itself in the middle of what the Court aptly described as a "celebrity divorce" between Petitioner and Mr. Potanin, see Dkt. 36 at 1-2, because of its former affiliation with Norilsk, a public Russian company with which Petitioner's ex-husband allegedly has had a number of relationships. Stillwater has no interest in the outcome of Petitioner's divorce or asset division proceedings. As a third party, Stillwater submits that Petitioner should, as the Federal Rules require, minimize the burden and cost of the discovery she seeks from Stillwater. See Fed. R. Civ. P. 45(d)(1).

Following the Court's order denying Stillwater's Motion to Vacate or to Quash or Stay the Subpoena, the parties have attempted to resolve the dispute over the scope of discovery, and the parties have made substantial progress. Specifically, Petitioner has clarified that she seeks two categories of documents:

- *First*, documents concerning three financial transactions by which Norilsk acquired or disposed of its interests in Stillwater, namely: (1) a Norilsk affiliate's purchase of Stillwater debt in March 2008; (2) Norimet Limited (Norimet)'s public sales of its Stillwater stock in December 2010; and (3)

1

the Norilsk affiliate's redemption of the Stillwater debt in March 2013 (collectively, "Norilsk transactions") during three targeted time periods.[1]

- *Second*, documents regarding Mr. Potanin or Interros from July 1, 2006 to the present to, in Petitioner's words, "understand the extent to which they were involved in any of the Norilsk transactions and any role that they have played or continue to play within Stillwater."

Much if not all of the information Petitioner seeks is publicly available. Stillwater is and has been a public company subject to U.S. securities laws during the relevant periods. Accordingly, nearly every detail of the Norilsk transactions, including the applicable purchase and sale agreements, is fully disclosed in Stillwater's securities filings.

Specifically as to Stillwater's debt offering, securities filings show that Stillwater sold $181.5 million worth of debentures on March 12, 2008, in a private placement; that the notes were subsequently resold to qualified institutional buyers, including $80 million to the Norilsk affiliate; and that, pursuant to a put option in Stillwater's indenture, on March 15, 2013, $164.3 million of the notes were tendered back to Stillwater, including all of the Norilsk investment. To supplement this publicly-available information, Stillwater agrees to review and

---

[1] The time periods are (1) December 1, 2007 – June 30, 2008 for the debenture purchase; (2) June 1, 2010 – January 31, 2011 for the equity exit; and (3) December 1, 2012 – July 1, 2013 for the debenture redemption.

produce additional documents related to the debentures, including those reflecting Stillwater's lump sum payments to Deutsche Bank Trust Company Americas, its paying agent, for (1) interest on the debentures for all holders and (2) redemption of the debentures tendered on March 15, 2013. Stillwater also agrees to review and produce the non-email documents related to the debenture purchase or redemption created or edited by its Chief Financial Officer Gregory Wing, its Controller Rhonda Ihde, its former Chief Executive Officer Frank McAllister, and its former General Counsel John Stark during the specified time periods.

Regarding the equity exit, the security filings show that Norimet sold its Stillwater shares in December 2010 via two public offerings. To supplement the publicly available documents, Stillwater agrees to review and produce documents related to the stock sale created or edited by Mr. Wing, Ms. Ihde, Mr. McAllister, and Mr. Stark. Stillwater also agrees to produce quarterly financial reporting it made to Norilsk while Norilsk was its majority owner.

The crux of the parties' remaining dispute concerns two issues. The first concerns what search terms will be used to create the universe of emails and attachments related to the Norilsk transactions that Stillwater will review for responsiveness and privilege. The second concerns the scope of responsiveness review for emails and non-email documents regarding Mr. Potanin or Interros. In each instance, Stillwater has proposed discovery reasonably calculated to provide

Petitioner with the very information she has requested, but Petitioner is insisting on an unreasonable and much larger set of data that will unjustifiably increase Stillwater's burden and cost.

### A. Norilsk Transaction Emails

Stillwater's proposed discovery relating to the Norilsk transactions is a reasonable response to Petitioner's requests. Petitioner seeks discovery regarding "the current or former locations of (and amounts of) Interros and Potanin assets." Dkt. 2, at 9. The only alleged link between Stillwater and Mr. Potanin or Interros is via Mr. Potanin's and Interros's alleged interests in Norilsk, and then via Norilsk's ownership of Stillwater debt or equity. Accordingly, production of non-email documents regarding the Norilsk transactions will give Petitioner the information she seeks about any alleged Potanin or Interros assets related to Stillwater.

Stillwater has nevertheless also offered to review and produce Mr. Wing's, Ms. Ihde's, Mr. McAllister's, and Mr. Stark's communications with Norilsk related to (1) the debenture purchase and redemption or (2) the equity exit to provide Petitioner with additional context for these transactions. To do so, Stillwater will review those emails that the four custodians sent or received during the relevant agreed time periods and that were addressed to, from, carbon copied, or blind copied to any individual with a Norilsk email address (one ending in either

"nornik.ru" or "nornickel.net"). The set of emails and attachments from which responsive, non-privileged or otherwise protected documents would be produced according to Stillwater's discovery plan totals more than 3,300 documents.[2]

Petitioner, instead, proposes that Stillwater search the same custodians' emails and attachments during the targeted periods for the terms "Norilsk" and "Norimet." Doing so would create a substantially larger database of documents to review for responsiveness and privilege. This approach would require attorney review of every email or attachment that in any way mentioned Norilsk or Norimet regardless of the context in which that word appears.

Petitioner's proposal would be unduly burdensome. The terms "Norilsk" and "Norimet" will generate a significant number of false positives given that Norimet was Stillwater's majority shareholder until 2010, a Norilsk affiliate held the debentures until 2013, and Norilsk competes in the same industry as Stillwater. Although Petitioner attempted to narrow the scope of the debenture-related email searches by requesting the addition of the terms "debenture" or "note," these terms do not significantly reduce the burden associated with the review, particularly as the term "note" likely also generates a large number of non-responsive documents. Preliminary search results indicate that adding these terms would increase the set

---

[2] For all four of the relevant Stillwater custodians, there are 3,774 emails and attachments hitting on the email domain searches during the three specified time periods. After deduplication, this set of documents is approximately 3,342.

of documents to review by up to approximately 11,000 emails and attachments,[3] which would likely increase the cost of review by approximately $300,000.

Moreover, reviewing nearly three times as many emails is not likely to produce any corresponding benefit for Petitioner. She has indicated that she is interested in the Norilsk transactions because, in her view, they involve Potanin or Interros assets. But Stillwater has already agreed to produce documents evidencing those transactions, and emails with Norilsk about those transactions. Petitioner complains that this production would omit purely internal Stillwater emails about these transactions. However, given that Stillwater is a public company four corporate levels removed from Petitioner's ex-husband, it is simply unlikely that any internal Stillwater correspondence would contain any material information bearing on the search for her marital assets.

---

[3] For all four Stillwater custodians, there are 4,557 emails and attachments that contain the search terms specified by Petitioner (*i.e.*, documents that contain either "Norilsk," "Norimet," "nornickel.net," or "nornik.ru" and the term "debenture" or "note") during the two time periods relating to the debenture purchase and sale. For technical reasons, this search result cannot be deduplicated across all four custodians without substantial cost and delay, but Stillwater does not anticipate that deduplication would significantly reduce the magnitude of the results. Similarly, there are 10,011 emails and attachments that contain the terms "Norilsk" and "Norimet" during the period relating to the equity exit. Similarly, these results cannot be deduplicated across all four custodians presently, but Stillwater likewise does not expect that deduplicating the results would meaningfully reduce them.

In any event, if the Court were to order review of the larger group of documents, Stillwater would need sufficient time to conduct its review for responsiveness and privilege. If the Court grants Stillwater's proposal concerning the Norilsk transactions, Stillwater will produce responsive, non-privileged documents within 30 days, but if it must review over three times as many documents, it requests at least 60 days to do so.

## B.     Mr. Potanin or Interros Emails and Non-Email Documents

Through the parties' meet and confer discussions, Stillwater learned that Petitioner sought documents regarding Mr. Potanin or Interros "to understand the extent to which they were involved in any of the Norilsk transactions and any role that they have played or continue to play within Stillwater." Accordingly, Stillwater offered to produce precisely what Petitioner requested, that is emails and non-email documents from the four custodians from July 1, 2006 until February 18, 2014, containing the term "Potanin" or "Interros" that relate to either (1) the Norilsk transactions or (2) the role that Mr. Potanin or Interros have played or continue to play within Stillwater.[4] Petitioner rejected Stillwater's offer, arguing that Stillwater should produce *all* emails and non-email documents from the four custodians containing the words "Potanin" or "Interros," regardless of their

---

[4]    For all four custodians, there are 2,083 emails and attachments hitting on either the term "Potanin" or "Interros" from July 1, 2006 until February 18, 2014. After deduplication, this set of documents is approximately 1,849.

7

relevance. This proposal ignores that Stillwater must review each email and attachment for privilege – a significant concern where one of the four custodians is Stillwater's former general counsel – and is entitled to review for responsiveness.

Petitioner's suggestion that Stillwater's offer is designed to hide evidence and exclude documents from production is meritless.[5] The purpose of Section 1782 is "to assist foreign tribunals in obtaining *relevant* information," *Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004) (emphasis added), and neither the statute nor precedent grants a petitioner unfettered access to a third party's documents, let alone a production that does not permit a respondent to conduct a document-by-document review for responsiveness and privilege or other protection. Petitioner's subpoena calls for documents related to Mr. Potanin's or Interros's alleged assets, ownership in Stillwater, sources of income, payments made or received, property, business transactions, or debts and credits – all of which would be captured by emails and non-email documents relating to the

---

[5] Petitioner may be misconstruing Stillwater's statement that, commencing on April 9, 2009 and continuing through the date of Norilsk's exit from its equity ownership in Stillwater in December 2010, Mr. Potanin, as demonstrated by the SEC filings, was not considered a control person at Stillwater for U.S. securities laws purposes, a point that that demonstrates how unlikely it is that there would be documents within Stillwater's possession, custody, or control after this date related to the role that Mr. Potanin or Interros "played or continue to play" at Stillwater. However, Stillwater's statement to this effect to Petitioner was not intended to indicate that Stillwater would not fairly identify those non-privileged or otherwise protected documents that relate to Mr. Potanin's or Interros's role at Stillwater, whatever that role was or has been in the discovery period since April 9, 2009.

8

Norilsk transactions, which are the only alleged link between Stillwater and Mr. Potanin or Interros. The subpoena also seeks all communications between Mr. Potanin or Interros representatives, on the one hand, and Stillwater, on the other, a request that is arguably even narrower than Stillwater's offer to produce all emails and non-email documents showing the role that either played or continue to play at Stillwater. Simply put, even Petitioner's overbroad subpoena contains some limits, and the mere fact that a document contains the term "Potanin" or "Interros" does not automatically render it responsive to Petitioner's requests.

There is thus no basis for prohibiting Stillwater from conducting a review for responsiveness, and Stillwater will be able to produce responsive, non-privileged documents in this category within 30 days of any order so requiring.

### C.     Rule 30(b)(6) Deposition

Petitioner asserts that she requires a one-day deposition of a Stillwater 30(b)(6) witness, whereas Stillwater has offered to provide an affidavit from Mr. Wing that addresses each of Petitioner's thirteen 30(b)(6) topics. Given the facts of this case, Stillwater's proposal should be accepted. Mr. Stark and Mr. McAllister, both of whom are no longer in Stillwater's employ or within Stillwater's control, were the Stillwater employees who primarily negotiated the financial transactions and interacted with Norilsk. Mr. Wing, Stillwater's CFO since 2004, is the only conceivable 30(b)(6) representative given Stillwater's

change in management, and educating him to testify in this capacity would be enormously burdensome given his minimal involvement in the transactions at issue. It would even be burdensome for Stillwater to draft the proposed affidavit as the key employees with knowledge of the transactions are no longer with Stillwater, but Stillwater offered to do so as a good faith compromise. Petitioner accepted an affidavit from Stone Tower Capital LLC, another respondent in a Section 1782 proceeding with a similarly attenuated relationship with Mr. Potanin or Interros. Petitioner has offered no explanation why such an affidavit would not be sufficient here or why, at a minimum, it should not have to demonstrate a genuine need for a deposition if it were first provided with an affidavit.

## II. SCOPE OF PROPOSED PROTECTIVE ORDER

The parties have largely agreed on a Protective Order by which Stillwater may designate (subject to challenge) certain documents and information as Confidential, and Petitioner may use such Confidential Information in enumerated Permitted Proceedings subject only to certain safeguards. Those safeguards are important given the type of information to be produced and the publicity surrounding the Potanins' divorce. But in three provisions of the Protective Order (shown on attached Exhibit B, which indicates where disagreements remain and Stillwater's responses and proposed changes to Petitioner's proposals), Petitioner seeks to expand the use of Confidential Information in ways that undermine those

safeguards and that are at odds with Section 1782 requirements. The Court should reject these three expansions, for the reasons stated below, and so order Stillwater's Proposed Protective and Confidentiality Order ("Proposed Order"), attached as Exhibit A.

First, in Paragraph 5(a) of the Protective Order, *see* Ex. B at 5, Petitioner seeks blanket permission to use Stillwater's Confidential Information in "any legal proceedings in respect of Potanin family property, where Petitioner is the plaintiff/petitioner and Vladimir Potanin is named as a defendant/respondent." This expansion has no jurisdictional or temporal limits; it would permit Petitioner to submit Confidential Information – obtained expressly for use in specified Russian proceedings – anywhere in the world. The relevant case law does not support this expansion, which impermissibly would give Petitioner "carte blanche to use respondents' information based on the hypothetical possibility that other . . . actions might be filed," with no supervision by this Court or notice to Stillwater. *Mirana v. Battery Tai-Shing Corp.*, No. 08-80142, 2009 WL 1635936, at \*3 (N.D. Cal. 2009); *see also Norcast S.A.R.L. v. Castle Harlan, Inc.*, No. 12-CV-4973, 2014 WL 43492, at \*10 (S.D.N.Y. 2014). Petitioner's approach here is error.

Stillwater's Proposed Order provides a more balanced and fair approach. It contemplates expanding the Permitted Proceedings, but subject to this Court's

approval.  *See* Ex. B  ¶ 13.  It thus gives Petitioner the opportunity to use Confidential Information elsewhere while ensuring that this Court is available to protect Stillwater's confidentiality interests as well.  This is not a mandate for a document-by-document review by this Court, *cf. In re Michael Wilson P*artners, Ltd., No. 06-cv-02575, 2007 WL 3268475, at *3 (D. Colo. 2007), but a requirement only that Stillwater may be heard by this Court regarding use of documents in as-yet unspecified jurisdictions as to which Stillwater has not yet been heard on the propriety of use or the risks that confidentiality would be destroyed.

Second, also in Paragraph 5(a), *see* Ex. B at 5, Petitioner seeks blanket permission to use Stillwater's Confidential Information in "any recognition or judgment enforcement proceedings related to any order or judgment rendered in the Russian Proceedings."  Despite its reservations over this expansion, Stillwater agrees to this amendment, if Petitioner gives Stillwater just three days prior notice so Stillwater can take appropriate steps if needed to safeguard confidentiality in the relevant jurisdiction.  Without such modest protection, Petitioner could submit Confidential Information to courts anywhere in the world even if they would put such information at risk of disclosure.  This is at odds with the persuasive precedent that requires the confidentiality rules abroad to be known before disclosure is permitted.  *See, e.g., Kulzer v. Biomet Inc.*, No. 09-MC-275, 2009 WL

3642746, at *9 (N.D. Ind. 2009) (denying Section 1782 discovery in part because petitioner "has failed to explain precisely how it intends to protect the confidentiality of Biomet's trade secrets in the German proceedings"). The requested notice, and assurance that confidentiality is available, *see* Ex. B at 8-9 (proposed amendment to ¶ 9), appropriately balance the parties' interests. Petitioner's apparent concern that notice could tip off Mr. Potanin ignores the fact that this proposed expansion would be relevant only after Petitioner had secured a Russian court judgment granting her entitlement to a specific asset, and hence there could be no "surprise" about Petitioner's interest in that asset. Petitioner's request also improperly presumes future misconduct in violation of Russian law in a way that violates Article III standing requirements, *see Los Angeles v. Lyons*, 461 U.S. 95 (1983), and is at odds with the Russian court's February 25 order directing Mr. Potanin to pay child support of 8.5 million rubles per month, *see* Dkt. 27-3, Ex. 3, and the absence of record evidence or even allegation that he has failed to do so.

Third, Petitioner seeks leave to disclose Stillwater's Confidential Information to "any Russian Federal agency of competent jurisdiction if necessary under Russian law." *See* Ex. B at 7. Stillwater agrees to this expansion, if such disclosure is made in response to a lawful and compulsory order of a Russian court or prosecutor of competent jurisdiction, and prompt notice is provided. Stillwater

13

has a strong interest in preventing non-compulsory disclosure of its Confidential Information to unspecified Russian authorities and in receiving prompt notice if it is disclosed. Stillwater's Proposed Order would allow Petitioner to disclose Confidential Information lawfully sought by Russian authorities, but not merely because Petitioner or one or more of her lawyers deem it to be "necessary."

For the foregoing reasons, Stillwater respectfully requests that the Court so order its Proposed Order regarding the scope of discovery and confidentiality.

Dated: June 10, 2014

/s/ *Jason S. Ritchie*

***Attorneys for Subpoena Respondent Stillwater Mining Company***

## CERTIFICATE OF COMPLIANCE

The undersigned, Jason S. Ritchie, certifies that the foregoing complies with the requirements of Rule 7.1(d)(2). The lines in this document are double spaced, except for footnotes and quot4ed and indented material, and the document is proportionately spaced with Time New Roman Font typeface consisting of 14 characters per inch. The total word count is 3,164 words, excluding caption and certificate of compliance. The undersigned relies on the word count of the word processing system used to prepare this document.

         /s/ *Jason S. Ritchie*

*Attorneys for Subpoena Respondent
Stillwater Mining Company*